1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6  Julie O.,

7                          Plaintiff,

8          v.

9  COMMISSIONER OF SOCIAL SECURITY,

10                         Defendant.

Case No. 21-5872-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11      Plaintiff has brought this matter for judicial review of defendant's denial of her

12  applications for disability insurance and supplemental security income (SSI) benefits.

13      The parties have consented to have this matter heard by the undersigned

14  Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

15  MJR 13.

16                          I.      ISSUES FOR REVIEW

17      A.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

18      B.  Whether the ALJ Properly Evaluated Plaintiff's Testimony

19      C.  Whether the ALJ Erred in Evaluating Lay Witness Testimony

20      D.  Whether the ALJ's RFC Determination Was Supported by Substantial

21          Evidence

22
23
24
25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

1

## II.   BACKGROUND

2
3
4
5
6
7

On February 6, 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits (DIB) and a Title XVI application for supplemental security ("SSI"), alleging a disability onset date of January 1, 2017. Administrative Record ("AR") 16, 65, 87. Plaintiff last meets the insured status requirements of the Social Security Act on December 31, 2022; therefore, the relevant period is the period between plaintiff's alleged onset date and her date last insured. AR 16.

8
9
10
11

Plaintiff's application was denied initially and on reconsideration. AR 64-107. Administrative Law Judge ("ALJ") Cynthia Rosa held a hearing on November 14, 2018 and issued a decision on January 3, 2019 finding claimant not disabled. AR 13-32, 38-61.

12

Plaintiff seeks judicial review of the January 3, 2019 decision. Dkt. 13.

13

## III.   STANDARD OF REVIEW

14
15
16
17
18
19

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

20

## IV.   DISCUSSION

21
22
23

In this case, the ALJ found that plaintiff has the severe impairments of obesity, degenerative disc disease of the lumbar spine (disc space narrowing at L5-S1), and a history of venous insufficiency. AR 19-20.

24
25

Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could perform past relevant work as an appointment setter and telemarketer. AR 25. In the alternative, the ALJ determined at step five that plaintiff could perform other jobs that exist in the national economy and was not disabled from her alleged onset date through the date of the ALJ's decision. AR 26-27.

A.  <u>Whether the ALJ Properly Evaluated Medical Opinion Evidence</u>

Plaintiff assigns error the ALJ's evaluation of Dr. Derek Leinenbach's opinion. Dkt. 13, pp. 2-6.

Under the rules applicable to this case, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Leinenbach evaluated plaintiff on May 24, 2017, and diagnosed her with bilateral lower extremity edema with stasis dermatitis, severe; severe obesity; cervicalgia; lumbago; knee arthralgia, bilateral; and shoulder pain, bilateral. AR 429-432. Based on these impairments, Dr. Leinenbach opined plaintiff is able to stand/walk for two hours in an eight-hour workday, has no objective sitting limitations, can lift/carry 20 pounds occasionally and 10 pounds frequently, and can reach frequently. AR 436.

1    The ALJ gave "some weight" to Dr. Leinenbach's opinion, finding plaintiff's

2    exertional and postural limitations consistent with Dr. Leinenbach's own "unremarkable

3    objective findings," but assigned "little weight" to plaintiff's reaching limitation, finding it

4    (1) inconsistent with plaintiff's "longitudinal medical evidence record," and (2) because it

5    was "based entirely upon claimant's subjective report." *See* AR 24-25.

6    With respect to the ALJ's first reason, an ALJ may reasonably reject a doctor's

7    opinions when they are inconsistent with or contradicted by the medical evidence. *See*

8    *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding

9    that a treating physician's opinion may properly be rejected where it is contradicted by

10   other medical evidence in the record). Yet frequent reaching would be consistent with

11   the demands of working in a sedentary occupation, such as appointment setter – which

12   the ALJ relied on a step four. AR 24; DOT 237.367-010, 1991 WL 672185. Therefore no

13   error occurred.

14   As the ALJ has provided at least one valid reason to discount Dr. Leinenbach's

15   opinion, the ALJ's error in discounting it based on other reasoning would be harmless.

16   *See Carmickle v. Commissioner, Social Se. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

17   2008) (including an erroneous reason among other reasons to discount a claimant's

18   credibility does not necessarily negate the validity of the overall credibility determination

19   -- where an ALJ provides other reasons that are supported by substantial evidence).

20   Plaintiff also argues the ALJ failed to provide a reason for rejecting Dr.

21   Leinenbach's opinion regarding plaintiff's standing and walking limitation. Dkt. 13, p. 3.

22   Plaintiff makes this argument presumably because the ALJ's RFC assessment did not

23   specifically include Dr. Leinenbach's finding that plaintiff be limiting to standing/walking

24

25

for two hours during an eight-hour workday, though the ALJ gave "some weight" to that portion of his opinion. *See* AR 21.

An ALJ must explain why a medical opinion inconsistent with the RFC assessment is rejected. *See* Social Security Ruling (SSR) 96–8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir.2010) (holding that an ALJ does not err in including limitations consistent with, not necessarily identical to, those assessed by a physician). Here, the ALJ ultimately determined, in pertinent part, that plaintiff would be limited to light work with an option to change position between sitting and standing in 30–60-minute intervals with sitting up to six hours daily. This limitation was consistent with Dr. Leinenbach's opinion and therefore, no error occurred. AR 21.

B.  Whether the ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff assigns error to the ALJ's evaluation of her subjective statements about symptoms and limitations. Dkt. 13, pp. 6-13.

Plaintiff testified to experiencing fatigue, pain, and stress. AR 45-46. She testified to working part-time setting appointments for a chiropractor, and stated that her fatigue and pain starts getting worse if she works more than 15 to 20 hours. AR 45. She explained she experiences "a lot of stress" because she cannot walk and has a hard time getting to work without the assistance of others. AR 46. Plaintiff asserted that she had severe edema in her legs, which meant she needed to elevate her legs for about half the day, when she sits down. AR 47, 55-57. She stated that one of the reasons she could only work 20 hours per week was because she needed to elevate her feet for half

the day, and did not feel it was possible to do that at work. AR 56. Plaintiff testified she is not able to stand for long periods of time and has difficulties moving around. AR 50. Plaintiff also testified that when she becomes stressed, her neck, back, and "everything" starts hurting. AR 46, 53.

When the Vocational Expert (VE) was asked by plaintiff's counsel, "If a person, regardless of other limitations, is required to spend at least four hours a day with his or her feet elevated above waist level, are there full-time jobs in the US economy for that person?", the VE answered, "[n]ot without modifications." AR 60.

The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms plaintiff testified to, plaintiff's allegations as to the severity of her symptoms were inconsistent with (1) plaintiff's daily activities, and (2) the objective medical evidence. AR 22.

With respect to the ALJ's first reason, an ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony or "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Plaintiff testified that she has been working as an appointment setter since April 2015. AR 45. She stopped working full-time, and at the time of the hearing she was working 20 hours per week. *Id.*

The ALJ discounted plaintiff's testimony based on the ability to work part-time. Though plaintiff testified to experiencing fatigue, pain, and stress at work, plaintiff also explained that the symptoms start to surface or worsen only if she exceeds her "maximum" of 15 to 20 hours. *See* AR 45. A claimant's demonstrated ability to work

1  may be a clear and convincing reason to discount their allegations as to the severity

2  and intensity of symptoms. *Drouin v. Sullivan,* 966 F.2d 1255, 1258 (9th Cir. 1992). And,

3  it is important for the Court to consider the ALJ's full explanation regarding a claimant's

4  activities. *Kaufmann v. Kijakazi,* 32 F.4th 843, 851 (9th Cir. 2022).

5        In this case, the ALJ made findings based on the totality of plaintiff's activities –

6  including chores, hobbies, writing, performing poetry at an open mic event, and artwork

7  that she was able to accomplish, the fact that she was able to play social games with

8  friends that would require concentration and social interactions, as well as her success

9  in working half-time as a scheduler for a chiropractic clinic and interacting with patients.

10  AR 21-22. The Court, therefore, finds the ALJ did not err in finding that plaintiff's activity

11  level was inconsistent with her testimony, and in this respect the ALJ did not err in

12  evaluating plaintiff's testimony.

13        The ALJ has provided at least one valid reason to discount plaintiff's testimony,

14  and in some cases the Court need not further assess whether the ALJ erred in

15  discounting plaintiff's testimony for other reasons. *See Carmickle v. Commissioner,*

16  *Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

17        Yet, in this case the medical record from 2016 supports the plaintiff's testimony

18  about the need to elevate her legs for half the day, due to severe edema and

19  complications such as pain, non-healing ulcers, venous insufficiency, and cellulitis,

20  associated with edema in her lower extremities. See, e.g., AR  338, 340, 370-377, 384-

21  389, (Dr. Cinciripini, Dr. Carrasco, Dr. Forsythe, and Dr. Feliciano [who reported on 6-

22  27-2016 "most recent episode of cellulitis required hospitalization with IV antibiotics"],

23  reports in March through September 2016, describing chronic lower extremity edema,

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

1    bilateral; Dr. Carrasco and Forsythe stated they discussed with plaintiff the "importance

2    of leg elevation" – AR 392).

3          Also, the ALJ did not discount the portion of Dr. Leinenbach's opinion (May 17,

4    2017) that found plaintiff had edema "present in both lower legs, along with bilateral

5    lower leg venous stasis dermatitis but no active wound." AR 23-24 (citing AR 429-431).

6    Dr. Leinenbach stated that plaintiff described "bilateral lower extremity edema, ongoing

7    for about 6-7 years. The edema decreases slightly with use of compression stockings

8    and elevation of the feet. She has had a few bouts of minor cellulitis in the past, but had

9    a severe infection in March 2016, which led to sepsis and a ten-day hospitalization. She

10   endorses skin discoloration and thickening in the lower legs. She endorses frequent

11   skin blisters." AR 429.

12         After 2017, the medical records do not discuss edema in any detail. See, e.g.,

13   AR 448 (Dr. Johnson during emergency room visit notes "no edema" on 9-5-2018), AR

14   458 (PA-C Meighan notes an ongoing diagnosis of bilateral edema, lower extremity, on

15   3-6-2018), AR 464 (ARNP Willits notes diagnosis of lymphedema of both lower

16   extremities, 7-30-2018), AR 472 (Dr. Morich notes no edema of extremities during

17   emergency room visit, 4-16-2018). This is a separate issue from the ALJ's

18   determination that plaintiff's statements about daily activities were inconsistent with her

19   statements about the severity of symptoms. As plaintiff points out, the ALJ engaged in

20   speculation in finding that the medical records did not show recent treatment for edema,

21   and inferring that the edema was no longer a significant limitation. Dkt. 18, plaintiff's

22   reply, at 8, citing AR 23.

23

24

25

1    The ALJ failed to take into account that plaintiff may have been able to engage in

2    daily activities as described, while also being able to elevate her legs for half the day in

3    response to conditions and symptoms associated with bilateral lower extremity edema.

4    But in a full-time competitive work environment, the Vocational Expert indicated (when

5    questioned by plaintiff's attorney), full-time jobs do not allow an employee to elevate

6    their legs for a large portion of the work day. AR 60.

7    In this case, the record is ambiguous and the ALJ's rejection of plaintiff's

8    testimony about elevating her legs to relieve symptoms of edema is not supported by

9    substantial evidence. This error was not harmless, because the VE specifically testified

10   that elevating one's legs for half the workday would preclude full-time employment.

11   Therefore, the Court reverses and remands for further proceedings to clarify the record

12   on this point.

13   C.  <u>Whether the ALJ Properly Evaluated Lay Witness Testimony</u>

14   Plaintiff assigns error to the ALJ's failure to evaluate lay witness testimony

15   evidence. Dkt. 13, pp. 13-14. Specifically, plaintiff contends the ALJ should have

16   evaluated evidence from SSA Interviewer K. Wreggit, who observed that plaintiff had

17   difficulty standing and walking, used a walking stick, was teary during the interview, and

18   indicated she was in a lot of pain with back spasms. AR 237-238.

19   In determining disability, "'an ALJ must consider lay witness testimony

20   concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

21   2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir.

22   2006)). The ALJ must "give reasons germane to each witness" before rejecting such lay

23   witness evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal

24

25

1   citations and quotation marks omitted). "Further, the reasons 'germane to each witness'

2   must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

3       In this case, the ALJ did not acknowledge the lay witness testimony. Plaintiff

4   argues this is error because had the ALJ done so, the ALJ could have reached a

5   different disability determination. *See* Dkt. 13, pp. 13-14. The Commissioner argues the

6   ALJ need not discuss every item of evidence, especially one "that is neither significant

7   nor probative," and therefore the ALJ's lack of acknowledgment of the lay witness

8   testimony in the decision was not harmful error. *See* Dkt. 17, p. 13 (citing *Howard ex rel.*

9   *Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)).

10      As discussed above, with respect to the plaintiff's daily activities and ability to

11  work half-time, the Court found the ALJ provided a valid reason to discount plaintiff's

12  symptom testimony. The error committed by the ALJ concerning the plaintiff's need to

13  elevate her legs is not at issue with respect to this lay witness statement. Here, the lay

14  witness's statements were substantively similar to plaintiff's symptom testimony. Thus,

15  even though the ALJ did not acknowledge the lay witness testimony, because the ALJ

16  provided a valid reason to discount plaintiff's testimony, that same reason also validly

17  discounts the lay witness's testimony. "[T]he ALJ's failure to give specific witness-by-

18  witness reasons for rejecting the lay testimony did not alter the ultimate nondisability

19  determination. Accordingly, the ALJ's error was harmless." *Molina*, F.3d at 1122.

20      D.  Whether the ALJ's RFC Determination Was Supported by Substantial

21          Evidence

22      Finally, plaintiff contends that the ALJ erred by failing to include all of plaintiff's

23  limitations in her RFC, and as a result, erred at steps four and five of the sequential

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

process. Plaintiff argues the ALJ erred because of the alleged errors addressed above concerning the ALJ's consideration of the medical evidence, her testimony, and lay witness testimony.

Plaintiff has shown that the ALJ erred in assessing her RFC with respect to her statements that she must elevate her legs, due to severe edema. Failure to specifically address the need for plaintiff to elevate her legs, and failure to include any limitation in the RFC with respect to elevating her legs, undermines the confidence in the ALJ's determination that plaintiff did not meet the criteria for disability. *See Brown Hunter v. Colvin,* 806 F.3d 487, 489 (9th Cir. 2015) (the ALJ erred by "simply reciting the medical evidence in support of [their] residual functional capacity determination."); *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (error for the ALJ to ask hypothetical questions that do not include all relevant limitations).

## CONCLUSION

Plaintiff asks that the Court remand for award of benefits, or alternatively, remand for further proceedings. Dkt. 13, p. 15.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

1

2

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

3

4

5

6

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

7

*Trevizo v. Berryhill*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020

8

(9th Cir. 2014)).

9

10

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

11

12

13

14

15

16

As discussed above, the ALJ harmfully erred in evaluating plaintiff's statements about symptoms of her edema including whether her condition(s) would result in a situation where – in order to successfully manage symptoms -- she needed to elevate her legs for an extended time, and whether this constitutes a work-related limitation that would prevent her from holding full-time employment.

17

18

19

20

21

22

On remand, the Commissioner is directed to hold a de novo hearing, take additional medical evidence as necessary, and re-evaluate the plaintiff's statements about symptoms. Because the ALJ must reassess the evidence, and a new set of hypothetical questions may be asked of the vocational expert during a new hearing, the ALJ is directed to re-evaluate the five step analysis, to determine whether there are previous jobs, or other jobs existing in significant numbers in the national economy, plaintiff can perform.

23

24

25

Based on the foregoing discussion, the Court finds the ALJ harmfully erred in deciding plaintiff was not disabled. Defendant's decision to deny benefits therefore is REVERSED AND REMANDED FOR ADDITIONAL PROCEEDINGS.

Dated this 11th day of August, 2022.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge